## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEST PALM BEACH FIREFIGHTERS' PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INTEGER HOLDINGS CORPORATION, JOSEPH W. DZIEDZIC, DIRON SMITH, and PAYMAN KHALES,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff West Palm Beach Firefighters' Pension Fund ("Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Integer Holdings Corporation ("Integer" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (as defined herein).

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities that purchased Integer common stock between July 25, 2024 and October 22, 2025, inclusive (the "Class Period") against Integer and certain of its officers and executives, seeking to pursue

remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Integer is a leading global medical device contract manufacturer specializing in cardiac rhythm management and cardiovascular products.  The Company's Cardio & Vascular ("C&V") segment contributes roughly 60% of Integer's revenue and includes electrophysiology ("EP") devices that map the heart's electrical activity to diagnose and treat arrhythmias.

3.      Prior to the Class Period, EP devices evolved significantly as Integer's customers advanced pulse field ablation ("PFA") technologies employing short, high-energy electrical pulses to treat atrial fibrillation.  Consequently, EP devices manufactured for PFA procedures represented a significant growth driver for Integer's C&V segment.

4.      The action alleges that Defendants misled investors regarding the Company's market position in the growing EP market and vastly overstated demand for Integer's EP devices. In reality, demand for Integer's EP devices had fallen off a cliff.  Indeed, rather than the Company's EP business outpacing market growth in the burgeoning EP market, revenue growth from Integer's EP devices was in fact decelerating.

5.      The truth was revealed to investors before markets opened on October 23, 2025, when Integer cut its full-year 2025 guidance and informed investors it expected net sales growth of -2% to 2% and organic sales growth of 0% to 4% for the full year of 2026.  Integer further admitted that two of its PE devices had experienced "slower than forecasted" market adoption and expected the slower demand impact "to continue into 2026."  Analysts immediately reacted, noting that Integer's sales guidance was "materially below the Street."

6.      On this news, Integer common stock fell $35.22 per share, or more than 32%, to a closing price of $73.89 per share on October 23, 2025.

7.    As a result of Defendants' wrongful acts and omissions, and the resulting decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District, as the common stock that is the subject of this action is traded on the New York Stock Exchange ("NYSE") in this Judicial District.

11.    In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.    Based in West Palm Beach, Florida, Plaintiff West Palm Beach Firefighters' Pension Fund provides retirement, death, and disability benefits to firefighters and their beneficiaries.  Plaintiff manages approximately $319 million in assets for the benefit of approximately 477 active and retired participants and their beneficiaries.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Integer common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Integer is incorporated under the laws of Delaware, with its principal executive offices in Plano, Texas.  Integer's common stock trades on the NYSE under the ticker symbol "ITGR."

14.     Defendant Joseph W. Dziedzic ("CEO Dziedzic") was, at all relevant times, Chief Executive Officer ("CEO"), President, and Director of Integer.

15.     Defendant Diron Smith ("CFO Smith") was, at all relevant times, Chief Financial Officer ("CFO") and Executive Vice President of Integer.

16.     Defendant Payman Khales ("COO Khales") was, at all relevant times, Chief Operating Officer ("COO") of Integer.

17.     Defendants CEO Dziedzic, CFO Smith, and COO Khales (collectively, the "Individual Defendants"), because of their positions with Integer, possessed the power and authority to control the contents of, among other things, Integer quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of Integer's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

18.     Integer and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Integer purports to be one of the largest medical device contract development and manufacturing organizations in the world.  The Company contracts with medical device companies to manufacture cardiac rhythm management and cardio and vascular medical devices.   The Company's C&V product line generates approximately 60% of Integer's total revenue.  As a part of the C&V product line, Integer manufactures electrophysiology (EP) devices, which diagnose and map the heart's electrical activity to address problems such as irregular heartbeats (cardiac arrhythmias).

20.     Prior to the Class Period, EP devices underwent a technological revolution as Integer customers began to develop devices for pulse field ablation (PFA) procedures that use brief, high-energy electrical pulses to treat atrial fibrillation. In turn, the industry became increasingly focused on integrating EP devices and PFA platforms to effectuate a more seamless cardiac procedure.  As a result, EP devices represented a significant growth driver for Integer's C&V segment.

21.     Leading up to the Class Period, during the Bank of America Healthcare Conference on May 14, 2024, CEO Dziedzic described PFA platforms as "a tailwind" due to the Company's "vertically integrated offering[,]" while also touting that Integer "benefit[ed] significantly from electrophysiology procedure growth."  He further explained, "We participate in the full procedure, which is . . . one of the strengths of Integer."

### Defendants' Materially False and Misleading Statements

22.     The Class Period begins on July 25, 2024.  Before markets opened that day, Integer issued a press release announcing its financial results for the second quarter of 2024.  In the press release, Integer touted that "Cardio & Vascular sales increased 11% in the second quarter 2024

compared to the second quarter 2023, driven by new product ramps in electrophysiology and structural heart, and the InNeuroCo and Pulse acquisition."   Also, in the press release, CEO Dziedzic informed investors that "[w]e continue to expect 2024 above-market sales growth of 9% to 11% and we are raising our full year adjusted operating income growth outlook to 14% to 21%. Our strong 2023 results and 2024 outlook demonstrate successful execution of our strategy."

23.     During the corresponding earnings call, CEO Dziedzic touted that Integer was "confident in [its] ability to deliver strong sales growth given our high visibility to consumer demand."  He further boasted that "[i]t is an exciting time at Integer given **our strong pipeline of development programs in faster-growing end markets expanding margins** and continued execution of our tuck-in acquisition strategy."

24.     During the question-and-answer portion of the July 25, 2024 earnings call, and in response to a KeyBanc analyst asking about the growth trajectory of the Cardio & Vascular segment, CEO Dziedzic stated:

> So[,] I'll start with if you look at the Cardio & Vascular product line sales on a rolling quarter basis, trailing 4-quarter basis were -- starting last year was up 17%, and reported in the quarter was up 11%.  You noted the organic growth of 4%.  I'll call out the first quarter for Cardio & Vascular organic growth was 9%.  **And for the full year, we're expecting high single-digit organic growth for C&V**.  So[,] when you look at the pieces, we think about the business on a rolling 4-quarter basis.  I wish [life] were linear, and I wish our customers['] manufacturing plans were perfectly linear, but they're not.  And so[,] we think the rolling 4-quarter basis is the best way to look at it.  **And if you look at our past 4 quarters, our electrophysiology business, although we don't report the specific number, it's growing at 1.5x the market growth rate**.  If you look at our structural heart sales, those are also growing very strongly, almost twice the market growth rate, recognizing that structural heart is a slightly a lower piece of our overall business.  And I think we've also been clear that we're under-indexed to TAVR, and we're really more focused in -- our growth is in mitral and tricuspid, and our guidewire business there has remained very strong.  So when we look at cardiovascular on a rolling 4-quarter basis, historically, **we**

*continue to see very strong growth when we look at for the full year, we expect to see high single-digit organic growth and on a reported basis, we expect that to be in the low double digit, call it, low-teens to mid-teens*, which is the guidance we provided on the product line slides for cardiovascular at Slide 27.

25.     During the same July 25, 2024 earnings call, an Oppenheimer analyst asked about the "incremental contribution from PFA" toward organic growth in the C&V segment.  In response, CEO Dziedzic explained:

> [O]n the organic growth for C&V of 4% in the second quarter.  This was very much expected by us.  *The order book we have gives us great visibility. There were no surprises in that*.  I wish our customers' manufacturing plans were perfectly linear.  I wish that as the lumpiness that occurs in our customers' production schedules didn't exist, but it does.  And I would point to and reiterate that we expect high single-digit organic growth in C&V.  If you look at the trailing 4-quarters, the C&V business is growing at 12 -- at 17% reported.  We've given guidance of low double digit, call it, low- to mid-teens.  So[,] we're very excited about our C&V business.  *Electrophysiology and structural heart, in particular, they're growing faster than the market.  We measure our customer sales, we aggregate that.  We look at what the market is growing at, and we're growing faster than the market in those 2 important segments*.

26.     On October 24, 2024, Integer issued a press release reporting its financial results for the third quarter of 2024.  The press release stated that "Cardio & Vascular sales increased 13% in the third quarter 2024 compared to the third quarter 2023, driven by new product ramps in electrophysiology and structural heart, and the InNeuroCo and Pulse acquisitions."

27.     During the corresponding earnings call, CEO Dziedzic again assured investors that Integer was "confident in [its] ability to deliver strong sales growth" given the Company's "high visibility to customer demand, including ramping programs in high growth markets. . . ."  CFO Smith also stated, "C&V growth is driven by above-market growth across all markets, new product ramps in electrophysiology and structural heart and the InNeuroCo and Pulse acquisitions."

28.     During question-and-answer portion of the October 24, 2024 earnings call, a Bank of America analyst asked for Integer to "go over the growth trends of your EP business over the last couple of quarters."  In response, CEO Dziedzic stated, in relevant part:

> So[,] electrophysiology is an exciting high-growth market.  ***We are highly vertically integrated.  We have a very strong position and footprint across the full procedure***.  And we expect it to continue growing, and we expect to be a strong participant.  And so our outlook hasn't changed.  Every day, I think, it gets brighter and brighter with the industry's progress.  But I'll just highlight, it's one of many growth factors for us, and I would not expect any one product or end market to be the single biggest driver or materially change the company outlook.  So[,] it's in our guidance as we continue to work with customers on their new product rollouts, we continue to factor that into our outlook.
>
> Our electrophysiology business continues to outperform the market.  We track our customers' reported sales by end market.  ***We then look at our sales by those end markets, and we're still growing 1.5-ish times the end market growth rate on a trailing 4-quarter basis, and we expect that to continue to accelerate as more and more products come to market***.

29.     On February 20, 2025, Integer issued a press release reporting its financial results for the fourth quarter and full year of 2024.  In the press release, the Company touted that "Cardio & Vascular (C&V) sales increased 15% in the fourth quarter 2024 compared to fourth quarter 2023, driven by new product ramps in electrophysiology and the Pulse acquisition."  The press release also highlighted that "[f]ull year sales increased 14% year-over-year, with strong growth across targeted C&V markets, driven by electrophysiology, structural heart, and the InNeuroCo and Pulse acquisitions."

30.     During the related earnings call, CEO Dziedzic continued to tout the Company's ability to outperform its peers, stating, "We continue to optimize our portfolio strategy and execute on product line strategies that enable us to win in the markets we serve."  CFO Smith also reiterated that "[f]or our Cardio & Vascular product line, trailing 4-quarter sales increased 14% year-over-

year with strong growth across targeted C&V markets[,]" which "was driven by new product ramps in Electrophysiology and Structural Heart and the performance of our INeuroCo and Pulse acquisitions."

31.     During the question-and-answer portion of the February 20, 2025 earnings call, a Bank of America analyst asked, in relevant part, "[W]ith some of the high-growth markets that you're serving in EP and structural heart, it seems like . . . the underlying growth of those markets continue to accelerate. . . .  [W]hy couldn't you maintain C&V growth closer to the mid-teens versus the low double digits that you're expecting?"  In response, CEO Dziedzic, in relevant part, stated, "***We're still outgrowing the market meaningfully in Electrophysiology*** and Structural Heart, ***and those are big contributors***. . . .  Low double-digit kind of has a range that could creep up into the range in the area that you're pointing to."

32.     On April 24, 2025, Integer issued a press release reporting its financial results for the first quarter of 2025, in which CEO Dziedzic boasted that "Integer started the year off strong with first quarter 2025 sales growing at 7% year-over-year as we continue to execute our strategy by launching new products and adding capabilities in targeted growth markets."  The press release also highlighted that "Cardio & Vascular sales increased 17% in the first quarter 2025 compared to the first quarter 2024, driven by new product ramps in electrophysiology and acquisitions . . . ."

33.     During the associated earnings call, CEO Dziedzic again assured investors that Integer was "confident" in its "ability to deliver strong sales growth, given [its] high visibility to customer demand, including ramping programs in high-growth markets," while also explaining that Integer's "strong execution strategy" was "enabling [the Company] to sustain above-market growth and expand [its] margins."

34.     During the question-and-answer portion of the April 24, 2025 earnings call, a Bank of America analyst asked the Company to expound upon the growth in the C&V segment "relative to the market."

35.     In response, CEO Dziedzic stated:

> [W]e continue to see strong growth overall in the Cardio & Vascular segment. We've talked about the 4 targeted growth markets. Three of them are in Cardio & Vascular. And we do continue to build that pipeline and launch new products. ***And electrophysiology does continue to outgrow the markets very nicely there***. We've reiterated that we participate . . . in many steps in that procedure. It's not just the ablation step, and that volume growth in the industry is contributing to our growth. The pulsed field ablation is also an opportunity for us as we get higher – we're getting higher content on average on the ablation catheter in that step. And so, we remain excited about electrophysiology. ***It continues to be a strong contributor to our growth. We are growing above the market***. But as you highlighted, there's other growth factors as well in the business that we remain excited about. And it starts with that development pipeline that gives us confidence in our sustained -- in our ability to sustainably outgrow the markets organically.

36.     Also on April 24, 2025, Integer issued a separate press release announcing the retirement of CEO Dziedzic as President and CEO, effective October 24, 2025, and that COO Khales would assume the role as Integer's President and CEO.

37.     Finally, on July 24, 2025, Integer issued a press release reporting its financial results for the second quarter of 2025, in which Integer again touted that "Cardio & Vascular sales increased 24% in the second quarter 2025 compared to the second quarter 2024, driven by new product ramps in electrophysiology," among other things.

38.     During the corresponding earnings call, CFO Smith informed investors that Integer was "tightening" its 2025 sales guidance on "both the high and low end[,]" expecting "sales to be in the range of $1.850 billion to $1.876 billion, an increase of approximately 8% to 9% versus last

year.  Given our strong first half sales and visibility to customer demand in the second half, we

believe $1.863 billion is the appropriate midpoint of our outlook."

39.    During the question-and-answer portion of the July 24, 2025 earnings call, a

CitiGroup analyst posited that growth in the C&V segment would remain strong and questioned if

narrowing the full-year sales guide was a result of other markets declining.  In response, COO

Khales stated:

> [A]t midpoint, our CRM&N [(cardiac rhythm management and
> neuromodulation)] guidance is 5%.  C&V is mid-teens, which we're
> looking at 15%, and other markets [are] down $32.5 million.  So[,]
> ***that's because of the visibility that we have to the customer demand
> with the backlog that we have, which is still in the range of about
> $700 million.  That gives us good visibility***.  So this is what's what
> [sic] guides us and why it makes us believe that the midpoint of
> $1,863 million is the appropriate place to be.

40.    The above statements set forth above in ¶¶ 22-39 were materially false and/or

misleading and failed to disclose material adverse facts about the Company's business, operations,

and prospects to make the statements made, in light of the circumstances under which they were

made, not false and misleading.  Specifically, Defendants failed to disclose that: (1) Integer

materially overstated its competitive position within the growing EP manufacturing market;

(2) despite Integer's claims of strong visibility into customer demand, the Company was

experiencing a sustained deterioration in sales relating to two of its EP devices; (3) in turn, Integer

mischaracterized its EP devices as a long-term growth driver for the Company's C&V segment;

and (4) as a result of the above, Defendants' positive statements about the Company's business,

operations, and prospects were materially false and misleading and/or lacked a reasonable basis at

all relevant times.

**The Truth Is Revealed**

41.     On October 23, 2025, before markets opened, the truth was revealed when Integer disclosed that it had lowered its full-year 2025 sales guidance to a range between $1.840 billion and $1.854 billion (from a range between $1.850 billion and $1.876 billion), which fell short of analysts' estimates of $1.866 billion.   Additionally, the Company informed investors that it expected net sales growth of -2% to 2% and organic sales growth of 0% and 4% for the full year of 2026.   In the press release, CEO Dziedzic stated that, ***"[w]hile select headwinds are expected to impact our 2026 sales***, we believe our strategy and strong product development pipeline will lead to a return to 200 basis points above-market organic growth in 2027."

42.     During the corresponding earnings call, COO Khales revealed that Integer "expect[s] sales of [three] new products to decline in 2026," with two of three being "electrophysiology [EP] products."   COO Khales further revealed that "the market adoption of these products has been slower than forecasted."   Later, on that same call, CFO Smith informed investors that, for the fourth quarter of 2025, "we expect C&V sales growth to decelerate from recent trends, ***reflecting a decline in the [two] new products in electrophysiology*** mentioned earlier.   This is consistent with our prior outlook.   However, ***we now expect this impact to continue into 2026***, primarily the first half."

43.     On this news, Integer common stock fell $35.22 per share, or more than 32%, from a closing price of $109.11 per share on October 22, 2025, to a closing price of $73.89 per share on October 23, 2025.

44.     Analysts immediately reacted to the news.   For example, Wells Fargo analysts downgraded their Integer common stock rating and highlighted that the Company's fourth quarter

and 2026 guidance was "materially below the Street." The Wells Fargo analysts proclaimed that a "re-rating will also require rebuilding investor confidence in management execution."

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities that purchased Integer common stock between July 25, 2024 and October 22, 2025, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, Integer common stock actively traded on the NYSE (an open and efficient market) under the symbol "ITGR." Millions of Integer shares were traded publicly during the Class Period on the NYSE. As of October 17, 2025, the Company had more than 35 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Integer or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interests that conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)     whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Integer;

d)     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Integer;

e)     whether the market price of Integer common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

### UNDISCLOSED ADVERSE INFORMATION

51.    The market for Integer common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Integer common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Integer common stock relying upon the integrity of the market price of the Company's shares and market information relating to Integer and have been damaged thereby.

52.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Integer common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Integer's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times.  Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

53.     As alleged herein, Defendants acted with scienter in that Defendants: knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

54.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Integer, their control over, receipt, and/or modification of the Company's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Integer, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

55.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

56.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Integer who knew that the statement was false when made.

## **LOSS CAUSATION**

57.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

58.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Integer common stock and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Integer common stock fell precipitously, as the prior artificial inflation came out of the price.

## **APPLICABILITY OF PRESUMPTION OF RELIANCE**
## **(FRAUD-ON-THE-MARKET DOCTRINE)**

59.    The market for Integer common stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Integer common stock traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Integer common stock and market information relating to Integer and have been damaged thereby.

60.    At all times relevant, the market for Integer common stock was an efficient market for the following reasons, among others:

a)    Integer common stock was listed and actively traded on the NYSE, a highly efficient and automated market;

b)      As a regulated issuer, Integer filed periodic public reports with the SEC and/or the NYSE;

c)      Integer regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)      Integer was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

61.     As a result of the foregoing, the market for Integer common stock promptly digested current information regarding Integer from all publicly available sources and reflected such information in the price of Integer common stock. Under these circumstances, all purchasers of Integer common stock during the Class Period suffered similar injury through their purchase of common stock at artificially inflated prices, and a presumption of reliance applies.

62.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of

investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder Against All Defendants**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Integer common stock; and (iii) cause Plaintiff and other members of the Class to purchase Integer common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

65.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Integer common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

66.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Integer's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Integer's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Integer and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

67.     Each of the Individual Defendants' primary liability and controlling-person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was

aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

68.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Integer's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.  As demonstrated by Defendants' misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

69.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Integer common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the markets in which the common stock traded or trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Integer common stock during the Class Period at artificially inflated prices and were damaged thereby.

70.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other

members of the Class and the marketplace known of the truth regarding the problems that Integer was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased Integer common stock, or, if they had purchased such shares during the Class Period, they would not have done so at the artificially inflated prices that they paid.

71.    By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against All Individual Defendants

73.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74.    The Individual Defendants acted as controlling persons of Integer within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by

Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

76.     As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

77.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)     Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

78.    Plaintiff demands a trial by jury.

Dated: December 10, 2025

Respectfully submitted,

By: */s/ Marco A. Dueñas*
**SAXENA WHITE P.A.**
Marco A. Dueñas
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
Email: mduenas@saxenawhite.com

Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund*

**KLAUSNER KAUFMAN JENSEN &
LEVINSON**
Robert D. Klausner (*pro hac vice*
forthcoming)
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Additional Counsel for Plaintiff West Palm
Beach Firefighters' Pension Fund*